OPINION
Appellant-defendant, William Maag, appeals his convictions for engaging in a pattern of corrupt activity in violation of Revised Code section2923.32(A)(1) and for trafficking in marihuana in an amount greater than 200 grams but less than 1,000 grams in violation of R.C. 2925.03, both of which were entered on a jury verdict in the Common Pleas Court of Hancock County, Ohio, on October 31, 2001.
On May 27, 1998, the Memphis Police Department recovered over $190,000.00 from Trinidad David "Chico" Gonzalez during a search of his duffle bag on a Greyhound bus at a Memphis, Tennessee bus station. In addition to recovering this money, a police canine trained in detecting narcotics alerted to the odor of narcotics on the money. This money eventually became part of a multiple jurisdiction investigation into what is now known as the Gonzalez family drug ring. Over the course of this investigation, authorities discovered the existence of a large-scale drug enterprise covering multiple states, including Ohio, which engaged in the sale and distribution of both cocaine and marihuana. The authorities also came to believe that the ringleader of this enterprise was Chico Gonzalez with the assistance of various members of his family, including Chico's brother, Roger Gonzalez, who operated from Findlay, Ohio.
In the latter part of 2000, several indictments were issued and various arrests were made as a result of the investigation of the Gonzalez drug ring. On February 21, 2001, the defendant, William Maag, was indicted on four counts: Count 1 — engaging in a pattern of corrupt activity; Count 2 — trafficking in marihuana; Count 3 — possession of cocaine; and Count 4 — aggravated burglary. The case proceeded to a jury trial, and on October 31, 2001, the jury returned verdicts of guilty on all four counts. Thereafter, the trial court sentenced the defendant to a term of imprisonment on each count for an aggregate total of twenty-three years for the four offenses. This appeal followed, and the defendant now asserts five assignments of error.
 First and Second Assignments of Error
"William Maag's conviction for Engaging in a Pattern of Corrupt Activity is against the manifest weight of the evidence, thereby denying him due process of law. Fourteenth Amendment, United States Constitution; Section 16, Article I, Ohio Constitution. (Sentencing Entry, Nov. 8, 2001, p. 2-4)."
"William Maag's conviction for Trafficking in Marijuana is against the manifest weight of the evidence, thereby denying him due process of law.Fourteenth Amendment, United States Constitution; Section 16, Article I, Ohio Constitution. (Sentencing Entry, Nov. 8, 2001, p. 2-4)."
In these first two assignments of error, the defendant asserts that the verdicts of guilty as to Count One, Engaging in a Pattern of Corrupt Activity, and Count Two, Trafficking in Marihuana, were against the manifest weight of the evidence. In reviewing whether the verdict was against the manifest weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Adkins
(Sept. 24, 1999), Hancock App. No. 5-97-31, 1999 WL 797144 (citing Statev. Martin (1983), 20 Ohio App.3d 172, 175; State v. Thompkins (1997),78 Ohio St.3d 380, 387). In addition, "`the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Campbell
(2000), 90 Ohio St.3d 320, 329 (quoting Jackson v. Virginia (1979),443 U.S. 307, 319). In making this determination, there are eight factors to consider, which include "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary." State v. Apanovitch
(1987), 33 Ohio St.3d 19, 23-24 (citing State v. Mattison (1985),23 Ohio App.3d 10, syllabus). However, "[t]he verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." State v. Jenks
(1991), 61 Ohio St.3d 259, 273.
The defendant was found guilty of violating R.C. 2923.32(A)(1), engaging in a pattern of corrupt activity, and R.C. 2925.03, trafficking in marihuana. Revised Code section 2923.32(A)(1) states that "[n]o person employed by, or associated with any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity[.]" An enterprise is statutorily defined as including "any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C). Corrupt activity is defined as "engaging in, attempting to engage in, conspiring to engage in . . . any of the following: . . . (2) Conduct constituting any of the following: . . . (c) Any violation of section . . . 2925.03, any violation of section 2925.11 of the Revised Code that is a felony of the first, second, third, or fourth degree and that occurs on or after July 1, 1996 . . . when . . . value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds five hundred dollars[.]" R.C. 2923.31(I)(2)(c). To constitute a pattern of corrupt activity, there must be two or more incidents of corrupt activity "that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E).
The indictment alleges that the defendant was associated with an enterprise engaged in the sale and distribution of marihuana and that he participated in the affairs of this enterprise through a pattern of corrupt activity. Although the indictment does not specifically state the predicate offenses constituting the corrupt activity, the bill of particulars alleges that the defendant violated R.C. 2925.03(A) and2925.11(A), both of which would constitute "corrupt activity" as defined by statute. In addition, the second count in the indictment alleges that the defendant knowingly sold marihuana in violation of R.C. 2925.03(A). This section states that "[n]o person shall knowingly sell or offer to sell a controlled substance." R.C. 2925.03(A).
Notably, the defendant does not dispute the existence of the Gonzalez family drug ring, that the actions alleged constitute a pattern of corrupt activity, the amount of the marihuana in question, or that the actions alleged amount to trafficking in or possession of marihuana. Rather, the defendant maintains that his convictions for engaging in a pattern of corrupt activity as a part of the Gonzalez drug ring and for trafficking in marihuana were against the manifest weight of the evidence as the State did not sufficiently demonstrate that he actually participated in this enterprise and that he engaged in the trafficking of marihuana. In support of this contention, the defendant asserts that the evidence produced by the State to support these allegations was minimal, vague, inconsistent, and given by self-serving witnesses as a result of plea negotiations.
A review of the evidence in this case reveals the following. At trial, Brian Shetzer testified pursuant to a plea agreement with the State regarding his participation in the Gonzalez drug ring. He testified that he was Roger Gonzalez's right-hand-man from 1999-2000, often conducting drug runs to Florida, Michigan, Illinois, and Toledo, Ohio, with and for Roger. Shetzer further testified that the Gonzalez ring bought and sold both cocaine and marihuana. Through Shetzer's testimony, the State presented evidence of how the drug ring operated and the street value of the drugs. Also, Shetzer testified that several people participated in the drug dealings of the Gonzalez family, including Mike Harpe, Chad Valentine, Rick Dietrick, Tom Maag, Robert Hernandez, Jr., and Juan Castillo. During cross-examination, Shetzer testified that he never witnessed the defendant engage in any drug deals involving the Gonzalez family. However, upon re-direct, he testified that various members of the Gonzalez drug ring, including the defendant's brother, Tom Maag, told him that the defendant was involved in these drug dealings.
Nicole Cramer, Roger Gonzalez's girlfriend, also testified at trial. Her testimony revealed that she lived with the defendant in the summer of 1999. Although she testified that she did not know if the defendant was dealing drugs for Roger, she did testify that she saw a baggie full of marihuana in the defendant's dresser drawer and that the defendant admitted to her that he dealt in pounds of marihuana. However, her testimony, like the testimony of several other witnesses, was given as part of her plea agreement with the State.
Robert Hernandez, Jr., also testified for the State. Hernandez testified that he had drug dealings involving cocaine with Brian Shetzer and Rick Dietrick, whom he knew to be a part of the Gonzalez drug ring, during 2000. Hernandez further testified that Dietrick offered marihuana to him, which Dietrick stated came from Tom Maag and the defendant. However, Hernandez also testified that he used cocaine during that time period and that he was cooperating with the State as a part of his plea negotiations.
Ryan Ludwig testified that in May of 1999, he went to the defendant's home and saw approximately four pounds of marihuana in the defendant's room. However, Ludwig never saw the defendant selling any of these drugs. Although Ludwig admitted to buying drugs for his personal use, he was not charged as one of the co-conspirators in the Gonzalez drug ring and as such was not testifying pursuant to plea negotiations.
Chad Valentine, another co-conspirator, also testified at trial. Valentine testified about how the drug ring operated, the various trips that he made to transport cocaine and marihuana for the ring, and his involvement with the defendant. Valentine testified that he bought marihuana from the defendant and had also sold it to the defendant. In addition, Valentine testified that the defendant sold drugs for the Gonzalez family in 1995. However, Valentine also admitted to taking many drugs since the age of sixteen. Valentine also testified pursuant to a plea agreement he entered with the State, and although he made written statements concerning several people involved in the drug ring, he admitted that he did not write a statement concerning the defendant.
Lastly, Roger Gonzalez testified on behalf of the State. Roger testified that he had been in the drug ring with his brother, Chico Gonzalez, since 1995, and that the ring dealt in both cocaine and marihuana from 1995-2000. He further testified that from 1995 until he was incarcerated in 1996, the defendant stored drugs for him in exchange for cocaine. Roger also testified that the defendant went on a drug run with his brother, Tom Maag, to Florida in 1995, and that Tom paid the defendant for going on this run. Roger then testified that he was released from prison in March of 1999, and sent to a halfway house for ninety days. Once released from prison, Roger rejoined the drug ring. Roger further testified that his girlfriend, Nicole Cramer, stayed with the defendant in 1999, and he would often stay with the defendant as well. According to Roger, the defendant sold marihuana and some cocaine for him during this time. Roger also testified that he and Tom Maag purchased 100 pounds of marihuana in 2000, that they took it to the defendant's home to break it up into smaller amounts, and that the defendant was given some pounds to sell. However, like many of the other witnesses for the State, Roger also testified as part of his plea agreement and was also a convicted felon.
In addition to the testimony of these witnesses, the State presented numerous exhibits concerning controlled buys of drugs from members of the Gonzalez family drug ring and searches made by law enforcement personnel. The State also called many law enforcement officers involved in the investigation of the drug ring to testify about the discoveries made during the investigation. By the conclusion of the trial, the State had presented the testimony of twenty-one witnesses and had thirty-nine exhibits placed into evidence, nearly all of which concerned the two charges now being challenged before this Court.
Although a majority of the witnesses against the defendant were convicted felons and co-conspirators who were testifying as a result of plea agreements, this information was made known to the jury. Their criminal histories and substance abuse problems were revealed to the jury members, who could then take that information and consider the reliability of these witnesses. Moreover, these witnesses corroborated one another, with the exception of Nicole Cramer who stated that she thought that the defendant was dealing drugs for someone outside of the Gonzalez family and not Roger. In addition, the witnesses were quite candid and forthcoming with the extent of their drug usage and drug dealings. Furthermore, Roger Gonzalez, one of the key members in this organization, stated that the defendant not only allowed him to store drugs at the defendant's home, but that the defendant went on two drug runs for him and also sold drugs for him. Likewise, other witnesses testified that the defendant sold marihuana for Roger Gonzalez, and Ryan Ludwig, who was not a convicted felon nor was he testifying as a result of a plea agreement, stated that he saw four pounds of marihuana in the defendant's own dresser.
While this Court is cognizant of the fact that drug dealers and felons are not the most reliable sources of information, this Court is also aware that these are often the best people to testify about others involved in the same criminal enterprise. In fact, law enforcement personnel testified that they have to use confidential informants who buy, sell, and/or consume drugs to gain access to the drug world in order to properly investigate drug rings and that often these individuals have criminal records and are working with the police in order to have their own charges reduced or dismissed. Upon reviewing the evidence presented in a light most favorable to the State, we find that a rational trier of fact could have found that the defendant was engaged in the trafficking of marihuana and the possession thereof and that he did so in connection with the Gonzalez drug ring. Accordingly, we do not find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Therefore, the first and second assignments of error are overruled.
 Third Assignment of Error
"The trial court erred in admitting Roger Gonzalez's written statement as a prior consistent statement, when it was written after he acquired a motive to lie. Sixth Amendment, United States Constitution; Section 10, Article 1, Ohio Constitution; Ohio Evid.R. 801(D)(1)(b). (State's Ex. 32, TR, Vol. VI, p. 1359-1365)."
The defendant next contends that the trial court erred by admitting the written statement of Roger Gonzalez as a prior consistent statement. This Court's analysis of this issue begins by noting that "the decision of whether or not to admit evidence rests in the sound discretion of the [trial] court[.]" Wightman v. Consolidated Rail Corp. (1999),86 Ohio St.3d 431, 437 (citing Peters v. Ohio State Lottery Comm. (1992)63 Ohio St.3d 296, 299); see also State v. Sage (1987), 31 Ohio St.3d 173,182. Thus, this Court will not disturb the trial court's decision unless it is unreasonable, arbitrary, or capricious. In addition, this abuse of discretion must have materially prejudiced the defendant. State v. Lowe
(1994), 69 Ohio St.3d 527, 532 (citing State v. Maurer (1984),15 Ohio St.3d 239, 265).
During his cross-examination of Roger Gonzalez, defense counsel specifically asked about three written statements given by Roger to authorities. The first two statements were given to federal authorities in April and May of 2001, as part of Roger's plea bargain with the federal government and did not implicate the defendant. However, the third statement, which implicated the defendant, was given to the State in October 2001, as part of Roger's plea agreement with the State. Defense counsel's apparent motive for so doing was to impeach the credibility of the witness. On re-direct, the State further questioned Roger about the third written statement and introduced the statement into evidence by having Roger identify it. Defense counsel then referred to this exhibit once again during his re-cross examination of Roger.
The State moved to have each of its exhibits admitted into evidence at the conclusion of its case-in-chief. Included in these exhibits was Roger Gonzalez's prior written statement regarding the defendant's involvement with the Gonzalez drug ring. The prosecutions stated reason for the admission of this exhibit was that it was needed to refute defense counsel's charge of recent fabrication. Counsel for the defendant generally objected to this exhibit as well as all but three of the State's exhibits. In explaining his basis for objecting to the exhibits, the defendant never asserted, until now, that the written statement of Roger Gonzalez was inadmissible hearsay nor did counsel object when Roger Gonzalez gave testimony concerning this exhibit. In sum, counsel for the defendant did not object when the relevant testimony was given, and he did nothing thereafter to call the attention of the trial court to this alleged hearsay error.
"It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Childs (1968), 14 Ohio St.2d 56, 61 (citing State v.Glaros (1960), 170 Ohio St. 471, paragraph one of the syllabus). Because the defendant did not provide an objection based upon hearsay, he waived such an objection and cannot assert one now. Moreover, given the fact that defense counsel chose to question the witness about this statement in an effort to impeach the witness and, thus, opened the door to such testimony, we can find no material prejudice to the defendant in the admission of this exhibit nor do we find that the trial court abused its discretion in admitting the exhibit. Therefore, this assignment of error is overruled.
 Fourth Assignment of Error
"The trial court erred in admitting excessive evidence about the alleged drug enterprise when the probative value of the evidence was substantially outweighed by unfair prejudice. Fourteenth Amendment, United States Constitution; Section 16, Article I, Ohio Constitution; Ohio Evid.R. 403(A) and (B). (State's Ex. 1-19, 23-39, TR, Vol. VI, p. 1365)."
In his fourth assignment of error, the defendant contends that the trial court erred in admitting excessive evidence about the alleged drug enterprise, much of which did not pertain directly to him. Once again this Court notes that "the decision of whether or not to admit evidence rests in the sound discretion of the [trial] court" and that decision will not be disturbed unless it is unreasonable, arbitrary, or capricious. Wightman, supra.
Generally, "[a]ll relevant evidence is admissible[.]" Evid.R. 402. However, relevant evidence must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). In addition, relevant evidence "may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Evid.R. 403(B).
Although the defendant admits that Exhibits 1-19 and 23-39 were relevant to the issue of the existence of the criminal enterprise, he maintains that they did not pertain to any involvement he may have had with this enterprise and their cumulative effect amounted to "prejudicial overkill." The exhibits in question consisted of items such as drugs, photos of drugs, chain of custody sheets, laboratory results of controlled substances that were seized by law enforcement, photos of concealed compartments in cars driven by co-conspirators in the drug ring, and other similar pieces of evidence, none of which directly implicated the defendant. However, an essential element of the charge of engaging in a pattern of corrupt activity is the existence of an enterprise. Not only did the State have to prove the existence of an enterprise beyond a reasonable doubt, it also had to prove that the enterprise was involved in illegal activity, specifically the sale and distribution of marihuana, beyond a reasonable doubt.
All of the challenged exhibits were related to the Gonzalez family drug ring, the enterprise to which the defendant was accused of belonging. The State sought to admit these exhibits in its effort to show that the enterprise existed, how it operated, and that it sold and distributed controlled substances, all of which were necessary to the State's case. This case involved an intricate, large-scale drug operation, spanning multiple states, which utilized numerous people to conduct its business. Demonstrating its existence and the way in which its business was conducted to a jury unfamiliar with the drug world, required considerable evidence. We do not find that the number of exhibits was so great so as to amount to the needless presentation of cumulative evidence or that its probative value was substantially outweighed by the danger of unfair prejudice to the defendant. Thus, the fourth assignment of error is overruled.
 Fifth Assignment of Error
"Trial counsel was ineffective for failing to adequately object to excessive evidence about the alleged drug enterprise and for failing to adequately object to the admission of Roger Gonzalez's written statement. Sixth and Fourteenth Amendments, United States Constitution; Section 10, Article I, Ohio Constitution. (TR, Vol. VI, p. 1359-1365)."
In his final assignment of error, the defendant asserts that he received ineffective assistance of counsel. This Court has previously addressed the issue of ineffective assistance of counsel when a trial has taken place and has determined that courts must consider "`whether the accused, under all the circumstances . . . had a fair trial and substantial justice was done.'" State v. Jones (Sept. 27, 2000), Auglaize App. No. 02-2000-07, 2000 WL 1420271, *2 (quoting State v.Calhoun (1999), 86 Ohio St.3d 279, 289). In addition, attorneys licensed by the State of Ohio "are presumed to provide competent representation."Jones, supra (citing State v. Hoffman (1988), 129 Ohio App.3d 403, 407).
The State of Ohio has also adopted the two-part test for determining whether a criminal defendant has been denied the effective assistance of counsel established by the United States Supreme Court in Strickland v.Washington (1984), 466 U.S. 668. See State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus. "A convicted defendant must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Jones, supra
(quoting Strickland v. Washington, 466 U.S. at 688, 694). As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley, 42 Ohio St.3d at 142. Regarding the second prong of Strickland, reasonable probability requires a probability sufficient to undermine the confidence in the outcome of the trial. Id. It is with these standards in mind, that this Court now scrutinizes the proceedings below.
The defendant maintains that trial counsel should have objected to the excessive amount of evidence regarding the alleged drug enterprise and that counsel failed to object to the admission of Roger Gonzalez's written statement. Given the fact that the defendant's trial counsel did object to the admission of the relevant exhibits and considering our decision regarding the fourth assignment of error, we find that the defendant's trial counsel's performance as to these exhibits did not fall below an objective standard of reasonableness. As for the failure to object to the admission of Roger Gonzalez's written statement specifically based upon hearsay, we find that even assuming that the statement was inadmissible hearsay, the defendant has failed to show that there is a reasonable probability that, but for this error, the result of the proceeding would have been different. Therefore, the fifth assignment of error is overruled.
For these reasons, all five assignments of error are overruled, and the judgment of the Common Pleas Court of Hancock County, Ohio, is affirmed.
Judgment affirmed.
HADLEY and WALTERS, JJ., concur.